UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


**ROSARIO ESPARZA, SR., and**
**CONSUELO ESPARZA,**

             **Plaintiffs**

       **v.**                        **Consolidated Case Nos.**
                                   **1:11-cv–874 and 875-HJW**

**PIERRE FOODS, n/k/a ADVANCED**
**PIERRE FOODS, INC.,**
             **Defendant**

<u>ORDER</u>


      Pending is the defendant's partial "Motion to Dismiss" (doc. no. 24 in Case No. 1:11-cv–874, <u>Rosario Esparza, Sr. v. Pierre Foods</u>) regarding four claims in the amended complaint. Also pending is the identical "Motion to Dismiss" filed in the companion case (doc. no. 25 in Case No. 1:11-cv–875, <u>Consuelo Esparza v. Pierre Foods</u>).[1] The cases have been consolidated for purposes of discovery and pretrial matters. Plaintiffs oppose the motion, and defendant ("Pierre Foods") has replied. Having fully considered the record, including the pleadings, the parties' briefs, and applicable authority, the Court will <u>grant in part and deny in part</u> the motion for the following reasons:

<u>I. Background and Procedural History</u>

---

[1] The amended complaint lists both plaintiffs and asserts claims for each plaintiff, as well as several claims jointly. The same amended complaint and motion to dismiss were filed in both cases. For simplicity's sake, the Court will refer to the amended complaint and the motion to dismiss in the singular.

On December 15, 2011, plaintiff Rosario Esparza, Sr. ("Rosario") filed a ten-count federal complaint with a jury demand (Case No. 11-cv–874). The complaint indicates Rosario was born on August 1, 1952 and is of "Mexican descent." He alleges various kinds of discrimination and retaliation in connection with his employment in the meat packing department at Pierre Foods, where he still works. He complains that, after filing a charge with the Equal Employment Opportunity Commission ("EEOC"), he "did not receive a 7% raise and bonus that he qualified for" (¶ 29). Plaintiff did not attach a copy of his EEOC charge to his federal complaint.

His wife, Consuelo Esparza ("Consuelo") also worked at Pierre Foods until her employment was terminated on or about September 30, 2010. She filed a similar federal nine-count federal complaint on December 15, 2011 (Case No. 11-cv–875). She indicates she was born on December 4, 1952, is of "Mexican descent," and also experienced various kinds of discrimination and retaliation while employed in the meat packing department at Pierre Foods. She alleges she filed an EEOC charge, but did not attach it to her federal complaint. Both plaintiffs are represented by the same counsel.

In February of 2012, Pierre Foods filed a partial motion to dismiss in each case pursuant to Rule 12(b)(6) and also moved to consolidate the two cases. Plaintiffs' counsel advised that the plaintiffs did not oppose consolidation. The Court ordered the two cases consolidated _only for purposes of discovery and pre-trial matters_ (see doc. no. 11 "Order"). The cases have not been consolidated

2

*__for purposes of trial__*.

Plaintiffs sought, and were granted, leave to file their tendered joint Amended Complaint instanter, thus mooting the initial motions to dismiss. On April 18, 2012, the plaintiffs' fourteen-count joint Amended Complaint (naming both Rosario and Consuelo Esparza as plaintiffs) was entered in the docket in each case (doc. no. 19 in Case No. 11-cv–874, and doc. no. 21 in Case No. 11-cv–875). Again, the plaintiffs referred to their respective EEOC charges, but did not attach copies to their amended complaint.

The amended complaint alleges "retaliation" under Title VII, at 42 U.S.C. § 2000e(2),(3), and (7), as to Rosario (First Cause of Action) and as to Consuelo (Second Cause of Action); "retaliation" under Title VII and 42 U.S.C. § 1981 for both plaintiffs (Third Cause of Action); a state claim for wrongful discharge of Consuelo (Fourth Cause of Action); "hostile work environment" under 42 U.S.C. § 2000e and Ohio R.C. § 4112.02 for Rosario (Fifth Cause of Action) and for Consuelo (Sixth Cause of Action); age discrimination under Ohio R.C. § 4112 for both plaintiffs (Seventh Cause of Action); age discrimination under the Age Discrimination in Employment Act ("ADEA") for both plaintiffs (Eighth Cause of Action); sex discrimination under Ohio R.C. § 4112 for Consuelo (Ninth Cause of Action); retaliation in violation of the Family Leave and Medical Act ("FMLA"), at 29 U.S.C. § 2611(a)(1)(D), for Rosario (Tenth Cause of Action); denial of FMLA leave to Consuelo (Eleventh Cause of Action); disability discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., for Rosario (Twelfth Cause of

3

Action); disability discrimination under Ohio R.C. § 4112 for Rosario (Thirteenth Cause of Action); and intentional infliction of emotional distress for both plaintiffs (Fourteenth Cause of Action). Plaintiffs seek relief including compensatory and punitive damages, injunctive relief, and attorney fees.

Defendant Pierre Foods answered the amended complaint and filed another motion to dismiss, which was entered in the docket in both cases (see doc. no. 24 in Case 1:11-cv–874; doc. no. 25 in Case No. 1:11-cv–875). As plaintiffs' counsel had not filed copies of the plaintiffs' EEOC charges and notices of dismissal/suit rights, defendant appropriately did so (doc. nos. 24-1, 25). Plaintiffs responded, and defendant replied. This matter is fully briefed and ripe for consideration.

## II. Issues Presented

Defendant seeks dismissal of four claims pursuant to Rule 12(b)(6). Specifically, defendant asserts that 1) the amended complaint does not allege any "extreme and outrageous" conduct, and thus, the joint claim for intentional infliction of emotional distress (Fourteenth Cause of Action) is subject to dismissal for failure to state a claim for relief; 2) the amended complaint has not pleaded sufficient facts for the Court to reasonably infer that Rosario is "disabled," and thus, his state and federal claims of disability discrimination (Twelfth and Thirteenth Causes of Action) should be dismissed; and 3) the joint claim for age discrimination under Ohio law (Seventh Cause of Action) is barred by the plaintiffs' election of remedies.

## III. Standard of Review

4

Initially, the Court notes that the defendant has filed an answer, and thus, the present motion will be construed as one brought under Rule 12(c). Fed.R.Civ.P. 12(c). "The legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same." Lindsay v. Yates, 498 F.3d 434, 437 (6th Cir. (Ohio) 2007); see also, Sensations, Inc., v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008).

In order to withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept a complaint's well-pleaded factual allegations as true for purposes of a motion to dismiss, but is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp., 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The court must focus on whether the plaintiff is entitled to offer evidence to support his claims, rather than whether he will ultimately prevail. Id.

Although courts generally do not consider matters outside the pleadings when reviewing a complaint for legal sufficiency, courts may consider exhibits

5

attached to the pleadings, if the documents are referenced in the complaint and are central to the plaintiff's claims. Nixon v. Wilmington Trust Co., 543 F.3d 354, 357 (6th Cir. 2008). Courts also may take judicial notice of orders issued by administrative agencies, such as the EEOC. Toth v. Grand Truck R.R., 306 F.3d 335, 348 (6th Cir. 2002). The Court will take judicial notice of the EEOC "Dismissal and Notice of Suits Rights" filed in the record (doc. no. 7-1 at 5-6, 9-10).

IV. Discussion

A. Whether the Plaintiffs' Joint Claim for Intentional Infliction of Emotional Distress (Fourteenth Cause of Action) Fails to State a Claim for Relief

In their amended complaint, both plaintiffs complain of their treatment at work, including alleged rude and derogatory comments by various individuals, being transferred to other departments, locker inspections, denial of a 7% raise for Rosario, and an increased workload and scrutiny after making complaints. Even taking all well-pleaded non-conclusory factual allegations as true for purposes of Rule 12(b)(6), the alleged conduct does not rise to the "extreme and outrageous" level necessary to state an actionable claim of intentional infliction of emotional distress under Ohio law. See Miller v. Currie, 50 F.3d 373, 377-78 (6th Cir. 1995) ("It is well accepted that intentional infliction of emotional distress claims may entirely appropriately be dealt with . . . in a motion to dismiss" and observing that a trial court may rule, as a matter of law, that certain conduct does not rise to the extreme level necessary to state a claim); Sinclair v. Donovan, 2011 WL 5326093, *11 (S.D.Ohio) (J.Spiegel) ("without an allegation of conduct that, as a matter of law, is

6

extreme and outrageous, plaintiffs' claim must be dismissed"); <u>Mann v. Cincinnati Enquirer</u>, 2010 WL 3328631, *5 (Ohio App. 1st Dist.) (affirming dismissal of claim of intentional infliction of emotional distress because the alleged conduct did not rise to the "extreme and outrageous" level); <u>Hanly v. Riverside Methodist Hospital</u>, 78 Ohio App.3d 73, 82 (1991) (emphasizing that the alleged conduct must be "extreme and outrageous").

In their amended complaint, plaintiffs allege that the defendant "knowingly, willfully, wantonly, with reckless disregard, and intentionally inflicted emotional distress" upon them and that they "suffered and will continue to suffer humiliation, embarrassment, severe emotional distress, and loss of compensation" (¶¶ 229-253). These allegations are conclusory. <u>Bell Atl. Corp.</u>, 550 U.S. 555 (emphasizing that "more than labels and conclusions" are required to withstand Rule 12(b)(6) analysis); <u>Iqbal</u>, 129 S.Ct. at 1949 ("more is required than unadorned, 'the defendant unlawfully harmed me' accusations"). The United States Supreme Court has emphasized that for purposes of Rule 12(b)(6), "threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 120 S.Ct. at 1949 (citing <u>Bell Atl. Corp.</u>, 550 U.S. at 555). In its factual section (¶¶ 9-54), the amended complaint fails to allege any acts that would amount to "extreme and outrageous" conduct for purposes of Ohio law. This claim is therefore subject to dismissal.

<u>B. Whether Plaintiff Rosario's Claims of "Disability Discrimination" under State and Federal Law Must be Dismissed For Failure to State a Claim</u>

7

Next, defendant argues that, for purposes of Rule 12(b)(6), the amended complaint does not allege sufficient facts to set forth "plausible claims" of disability discrimination for Rosario under the ADA (Twelfth Cause of Action, ¶¶ 189-211) or under Ohio R.C. § 4112 (Thirteenth Cause of Action, ¶¶ 212-228).

The ADA prohibits discrimination by a covered entity "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, the Ohio Civil Rights Act (which was modeled on the ADA) provides:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of the . . . disability. . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio R.C. § 4112.02(A); Columbus Civ. Serv. Comm. v. McGlone, 82 Ohio St.3d 569, 573 (1998). As Rosario was not discharged and is still employed at Pierre Foods, he is apparently bringing his claims under the language in both statutes prohibiting employers from discriminating with respect to "other terms, conditions, and privileges of employment," such as his alleged entitlement to a 7% raise.

The ADA, as amended by the "ADA Amendments Act of 2008 ("ADAAA"), defines the term "disability" to mean "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record

of such an impairment; or (C) being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1).2 Paragraph (C) does not not apply to impairments that are "transitory and minor," with "transitory" meaning six months or less. 42 U.S.C. § 12102(3)(B). The rules of construction regarding the definition of disability indicate that "the definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4). The federal implementing regulations also indicate that "the term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and that this term is not meant to impose a "demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

The Ohio statute, which was modeled on the ADA, defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." Ohio R.C. § 4112.01(A)(13).

---

2 The ADAAA amendments were effective January 1, 2009, and apply here, as the case must be decided "using the law in force at the time the complained of activity occurred." Vaughn v. Rent A Center, Inc., 2009 WL 723166, at *3 n. 1 (S.D.Ohio); Milholland v. Sumner Cty. Bd. of Ed., 569 F.3d 562, 565 (6th Cir. 2009) (holding that the amendments are not applied retroactively). The amended complaint indicates that retaliation occurred "since around January 2010 until present" (doc. no. 21 at ¶56), but lacks specific dates as to when any allegedly discriminatory conduct occurred. Rosario's EEOC charges refer to events in 2010. The defendant has not raised any timeliness issues in the present motion to dismiss.

While the state and federal statutes are not identical in all respects, courts may generally look "to the ADA and its interpretation by federal courts for guidance in interpreting the Ohio statute." <u>Pinchot v. Mahoning Cty. Sheriff's Dept.</u>, 164 Ohio App.3d 718, 722 (2005); <u>Scalia v. Aldi, Inc.</u>, 2011 WL 6740756, ¶ 23 and fn.1 (Ohio App. 9 Dist) (observing that federal decisions on the ADA are relevant to cases under the Ohio statute "when the terms of the federal statute are consistent with Ohio law or when R.C. Chapter 4112 leaves a term undefined"). Generally, analysis of the federal claim will resolve the state claim as well.

The amended complaint's factual allegations for Rosario's federal and state disability discrimination claims are similar. Plaintiff alleges that he suffered from kidney stones (¶¶ 198, 214), that his physical impairment "substantially limits at least one major life activity" (¶¶ 197, 214), that his kidney stones "prevented him for (sic) standing, lifting, bending, driving, and working" and "affected his ability to control his bladder" (¶¶ 199, 200), that his employer "knew or had reason to know that Rosario suffered from a disability and/or regarded him as disabled" (¶¶ 205, 222), that he had to "request off work numerous times due to the pain . . . and to attend medical treatment" (¶ 201), that it was severe enough for him to "schedule" surgery on September 20, 2010 to remove the stones (¶ 202), and that he was medically restricted from working "for two weeks or until his condition improved" (¶ 204). Although certain allegations in Rosario's ADA claim (¶¶ 210-204) are not repeated in his state claim, the latter incorporates "by reference all previous allegations" (¶ 212).

10

Defendant argues that Rosario's federal and state disability discrimination claims should be dismissed because "the factual allegations do not support a reasonable inference that [Rosario] suffered a disability, a material element of a disability discrimination claim" (doc. no. 24 at 13). Defendant then argues that "[t]o state a prima facie case for disability discrimination under the ADA, a plaintiff must show that: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced," citing Macy v. Hopkins County Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007). Although defendant cites this summary judgment case regarding the "elements" of the prima facie case, the Sixth Circuit Court of Appeals has explained that "the prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading requirement." Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012) (emphasizing that it is error "to require [plaintiff] to plead a prima facie case under McDonnell Douglas in order to survive a motion to dismiss").

At this early stage of the proceedings, the Court need only consider whether the amended complaint sufficiently states plausible claims, not whether plaintiff has made out a prima facie case based on indirect evidence. Keys, 684 F.3d at 609 (explaining that the burden-shifting evidentiary framework may not even apply if a plaintiff relies on direct evidence). Thus, any argument about the "prima facie" case is premature, as it pertains to the evidentiary framework on summary judgment.

11

See Pedreira v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009), cert. denied, 131 S.Ct. 2143 (2011) ("On a motion to dismiss, however, these arguments are premature").[3]

For purposes of Rule 12(b)(6), the Court need only consider whether the amended complaint provides sufficient factual content to present plausible claims under the relevant statutes. Bell Atl. Corp., 550 U.S. at 570; Iqbal, 556 U.S. at 679; Keys, 684 F.3d at 609. That said, the interpretive guidelines for the federal regulations do envision some threshold consideration of whether a person's medical condition, as alleged, plausibly states a "disability." See 29 C.F.R. § 1630.2(j)(1)(iv) ("the ADAAA and these regulations establish a degree of functional limitation required for an impairment to constitute a disability that is consistent with what Congress originally intended . . . This will make the disability determination an appropriate threshold issue but not an onerous burden for those seeking to prove discrimination under the ADA.").

Defendant concentrates its argument on various perceived short-comings regarding the allegations of "disability" in the amended complaint. For example, defendant notes that the amended complaint alleges that Rosario was *scheduled* for surgery, not that he actually underwent surgery. Defendant also contends that

---

3 Defendant fails to note that Macy was expressly abrogated by Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312, 315 (6th Cir. 2012) (en banc) (holding that plaintiff was not required to show that disability was the sole reason for the adverse employment action, but rather, plaintiff has burden of showing that disability was a "but-for" cause of the employer's adverse action). Similarly, plaintiffs rely on a summary judgment case, Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996), that was also abrogated by Lewis v. Humboldt.

the amended complaint "speaks only to the two-week impairment," suggesting that Rosario had no impairment beyond the two week recuperation period. Defendant cites some non-binding case law for the proposition that the temporary nature of a plaintiff's medical condition puts the claim "outside the scope of the ADA" (doc. no. 24 at 16). Defendant argues that the amended complaint does not allege that Rosario had any ongoing kidney stones or any resulting impairment that continued to affect him beyond the two week period.

While the amended complaint is hardly a model of clarity, it does appear to meet minimal pleading requirements insofar as it alleges sufficient facts to draw a reasonable inference that Rosario had a disability or was regarded as disabled for purposes of the ADA and Ohio law. Under the ADA, an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(D). Plaintiff Rosario's allegations about his kidney stones appear to meet this minimal threshold. Accepting the non-conclusory factual allegations as true for purposes of Rule 12(b)(6), and drawing any permissible reasonable inferences from those factual allegations, plaintiff Rosario has alleged sufficient facts to plausibly state that he had a "disability" for purposes of Rule 12(b)(6).

The Court further observes that as the basis for his claims under the ADA and Ohio R.C. § 4112.02, plaintiff alleges that defendant "discriminated against [him] for requesting time off work for his physical impairment by harassing, belittling, intimidating, and making negative remarks to [him] about his disability"

13

(¶¶ 206-207, 223), treated him differently (¶ 209, 226) and "retaliated, coerced, and/or interfered with [his] lawful actions in his attempt to exercise his rights" (¶¶ 208, 225). These vague allegations suggest that plaintiff has confused the basis for his disability claims (¶¶ 189-228) with the basis for his FMLA retaliation claim (¶¶ 158-170, Tenth Cause of Action). The defendant has not addressed this in its motion, and the Court will not dismiss the disability claims on the basis of an unbriefed issue.

## C. Whether Plaintiffs' Claim for Age Discrimination under Ohio Law is Barred by Plaintiffs' Election of Remedies

Lastly, defendant moves for dismissal of the plaintiffs' jointly-asserted claim of age discrimination under Ohio law ("Seventh Cause of Action") because such claim is barred by the plaintiffs' election of remedies.

The amended complaint alleges that the defendant's "conduct in treating Rosario and Consuelo differently from similarly situated younger employees and harassing plaintiffs about their age violated O.R.C. Chapter 4112" (¶ 132). The amended complaint refers generally to Chapter 4112 without specifying which provision of that chapter applies. As the amended complaint refers to claims under Ohio R.C. § 4112.02 in its jurisdictional section (doc. no. 19, ¶ 6), this jointly-asserted claim is presumably brought under that section. Accordingly, the Court will limit its discussion to that section.[4]

Ohio law provides employees with several mutually-exclusive means of

---

4 Plaintiffs do not specify whether their claim is brought under part (A) or (N) of Ohio R.C. § 4122.02.

seeking relief for age discrimination claims. An employee may pursue an administrative remedy by filing a charge with the Ohio Civil Rights Commission ("OCRC"). See Ohio R.C. § 4112.05(B)(1) (providing that "[a]ny person may file a charge with the [OCRC] commission alleging . . . an unlawful discriminatory practice . . . the charge shall be in writing and under oath"). Alternatively, an employee may bring an age discrimination claim in a civil lawsuit, such as a claim under Ohio R.C. § 4112.02. The employee may not do both. See Morris v. Kaiser Engs., Inc., 14 Ohio St.3d 45, 46 (1984) ("Each of these avenues of relief provides that it is exclusive and, that once an action is instituted thereunder, a plaintiff is barred from bringing an action under either of the other two provisions; Balent v. Natl. Revenue Corp., 93 Ohio App.3d 419 (Ohio App. 10 Dist. 1994) (affirming dismissal of state age discrimination claims in civil suit because plaintiffs had already filed OCRC charges, thereby electing remedy).

The Ohio Admin. Code § 4112-3-01(D)(3) provides that a charge filed with the EEOC:

> "which lists the [Ohio] commission as the deferral/referral agency, or which is received by the commission for investigation, is deemed filed with the commission on the date the charge is received at one of the commission's offices . . . . A charge filed with the EEOC . . . is deemed timely filed with the commission provided that the charge is filed with EEOC within six months of the alleged discriminatory acts."

"In deferral states, such as Ohio, with worksharing agreements between the EEOC and the state agency, a filing with the EEOC is automatically referred to the state agency and is deemed received by the other." Welker v. Goodyear Tire Co., 1997

15

WL 369450, *2 (6th Cir. (Ohio)). In other words, "[b]ecause Ohio and the EEOC are parties to a worksharing agreement, plaintiff's EEOC filing is deemed filed with the OCRC." Id.; Neal v. Franklin Plaza Nursing Home, 2009 WL 1156706, at ¶ 17 (Ohio App. 8 Dist.) (same, affirming district court's holding that state age discrimination claim was barred by plaintiff's election of remedies). In Neal, as in the present case, the EEOC charge form expressly indicated: "I want this charge filed with both the EEOC and the State or Local Agency, if any."

Here, the record reflects that the plaintiffs sought remedies under two avenues of relief, i.e., they each filed EEOC charges (including age discrimination claims) that were automatically referred to the OCRC. Plaintiffs subsequently filed lawsuits bringing claims of age discrimination under Ohio R.C. § 4112.02. Defendant asserts that the plaintiffs' Ohio claims of age discrimination are barred as a matter of law by their election of remedies. Defendant argues:

> Plaintiffs elected to pursue their administrative remedies by filing an EEOC charge. The charge forms which Plaintiffs signed state "I want this charge filed with both the EEOC and the State or local Agency, if any." Exhibits 1 and 2. Under Ohio law, the EEOC charges were deemed filed with the OCRC, and were fully investigated. Ohio Admin. Code § 4112-3-01(D)(3) . . . Plaintiffs then filed suit in this Court under Ohio Revised Code Chapter 4112. Because Plaintiffs have filed charges of age discrimination with the EEOC and OCRC, their age discrimination claim under Ohio law is barred by the doctrine of election of remedies. Ohio's statutory scheme simply does not permit multiple avenues of redress for age discrimination claims.

(doc. no. 25 at 12). Numerous cases support this position. See Talbott v. Anthem Blue Cross & Blue Shield, 147 F. Supp. 2d 860, 862 (S.D. Ohio 2001) (J. Sargus)

16

(holding that employee's state claim of age discrimination was barred under election of remedies doctrine); Senter v. Hillside Acres Nursing Ctr. of Willard, Inc., 335 F.Supp.2d 836, 849 (N.D.Ohio 2006) ("[a] plaintiff who first files an age discrimination charge with the OCRC therefore may not bring a civil lawsuit under any provision" of Ohio R.C. § 4112); Hillery v. Fifth Third Bank, 2009 WL 1322304, *4 (S.D.Ohio) (J. Smith) (agreeing with the analysis in Senter and holding that "a charge of age discrimination filed with the EEOC constitutes a filing with the OCRC, triggering Ohio's election of remedies doctrine"); Williams v. Rayle Coal Co., 1997 WL 598091, *3 (Ohio App. 7 Dist.) ("It is clear from the record that . . . [plaintiff] filed a claim . . . with the [EEOC]. Such claim, through O.A.C. § 4112-3-01(D), was in effect also filed with the [OCRC]. As such, [plaintiff] was statutorily barred from pursuing a civil judicial remedy according to R.C. Chapter 4112.").

Research also reflects authority to the contrary. See Spengler v. Worthington Cylinders, 438 F.Supp.2d 805 (S.D.Ohio 2006) (J. Marbley) (holding that plaintiff's filing of an EEOC charge of age discrimination did not amount to an election to pursue an administrative remedy under Ohio law, but dismissing claim on other grounds, i.e. untimely filing); Reminder v. Roadway Express, Inc., 2006 WL 51129 (N.D.Ohio) (J. Gwin) (denying motion to dismiss based on election of remedies, and holding that mere filing of an age discrimination charge with the EEOC is not equivalent to the election of an administrative remedy under § 4112.05); Carr v. French Oil Mill Machinery Co., 746 F.Supp. 700, 703 (S.D.Ohio 1989) (J. Rice) ("Even if the EEOC did refer Plaintiff's original charge to the OCRC, this Court is convinced

17

that an election of the state administrative remedy by Plaintiff did not occur."). These courts rejected an overly broad reading of O.A.C. § 4112-3-01(D)(3).

The Spengler and Carr cases relied on an unpublished opinion, Lafferty v. Coopers & Lybrand, 1988 WL 19182 (6th Cir. (Ohio)). In Lafferty, the Sixth Circuit Court of Appeals reversed the district court's dismissal of plaintiff's state age discrimination claim, reasoning as follows:

> A party in plaintiff's position must choose whether to proceed under Ohio Revised Code § 4101.17, the age discrimination provision, as plaintiff has, under section 4112.02, which is the general anti-discrimination provision, or to seek an administrative remedy under section 4112.05. This latter section refers to the Ohio Civil Rights Commission, and not the EEOC. Plaintiff, as required by federal law as a prerequisite to filing a claim under the ADEA, informed the Ohio Civil Rights Commission of his charge. The charge would be processed by the EEOC and not by the state agency. There is no indication that Ohio intended to bar a plaintiff who went to the EEOC, seeking no remedy from the Ohio Civil Rights Commission, from pursuing a claim under section 4101.17 where filing with the EEOC is required for the filing of a federal claim.

1988 WL 19182, at *4.

The Spengler case also relied on McLaughlin v. Excel Wire & Cable, Inc., 1986 WL 16659 (6th Cir. (Ohio)). In McLaughlin, the district court had granted summary judgment in the employer's favor. The Sixth Circuit Court of Appeals reversed and remanded for consideration of 1) whether "an EEOC referral to the OCRC bars a subsequent state law claim" and 2) timeliness issues. The Sixth Circuit Court of Appeals observed that "[f]iling a charge with the EEOC simply cannot be equated with instituting an action with the OCRC." Id. at *3. The Sixth

18

Circuit Court of Appeals gave several reasons, including 1) that Ohio statutes "clearly preclude the judicial remedies under state law only if a charge, in writing and under oath, is filed with the OCRC within six months of an alleged discriminatory practice," and 2) "since a filing with the EEOC is a prerequisite to bringing a subsequent suit under the ADEA, adoption of the district court's holding would foreclose ever bringing an action alleging age discrimination violative of both the ADEA and Ohio law in federal court." Id. The McLaughlin court indicated that "[s]uch a result would run contrary to the interrelated and complementary nature of federal and state employment discrimination procedures," but did not specifically discuss the effect of O.A.C. § 4112-3-01(D)(3).

Federal courts generally must apply state law "in accordance with the then controlling decision of the highest state court." United States v. Anderson Cty., Tenn., 761 F.2d 1169, 1173 (6th Cir. 1985). The Ohio Supreme Court has not definitively decided the issue presented here regarding election of remedies, but has recognized the exception that, if a plaintiff expressly acknowledges in an EEOC/OCRC charge that no OCRC investigation is requested because the charge is being filed only to perfect federal rights, the election of state remedies will not apply. See Morris, 14 Ohio St.3d at 46 (holding that a claimant who had previously filed a state claim of age discrimination was not barred from filing an OCRC charge in order to satisfy the mandatory prerequisite to an action under the federal ADEA); see also, Talbott v. Anthem Blue Cross and Blue Shield, 147 F. Supp. 2d 860 (S.D. Ohio 2001) (for exception to apply, plaintiff must expressly indicate that the charge

19

is being brought only to perfect federal ADEA rights); <u>Senter</u>, 335 F.Supp.2d at 849 (same); <u>Fowler v. Hudson Foods</u>, 96 Ohio Misc.2d 19, (Ohio Com.Pl. 1998) ("plaintiff first filed with the EEOC, which is deemed to be filing with the OCRC, [and] failed to state that the charge was filed for the sole purpose of perfecting an ADEA claim; therefore, the plaintiff has elected an administrative remedy under the Ohio Revised Code and is thereby barred from pursuing" a state claim of age discrimination in a civil action). The record reflects no basis for this limited exception to apply here, as the Esparzas did not expressly indicate they were only seeking to perfect their federal rights. The defendant therefore urges the Court to dismiss the plaintiffs' state age discrimination claim.

Based on the limited record presently before the Court, it is unclear whether the OCRC actually investigated the plaintiffs' claim or had any role here, other than to be notified of the plaintiffs' EEOC charges. The present plaintiffs did not file a charge directly with the OCRC. If that were the case, the issue would be simple. See, e.g., <u>Balent</u>, 93 Ohio App.3d at 419 (affirming dismissal of state age discrimination claims in civil suit because plaintiffs had already filed OCRC charges thereby electing remedy), motion to certify overruled by 1994 WL 232218 (Ohio App. 10 Dist. May 24, 1994). The Court is reluctant to entirely bar the plaintiffs' claim based solely upon boilerplate language, especially since civil rights statues are construed liberally to do justice. The record does not indicate whether the plaintiffs had counsel when they filed their EEOC charges with the help of a language interpreter. The record also does not reflect that they were

20

even aware of any "election" of remedies or that they were required to expressly indicate that their EEOC charge was being brought only to perfect their federal claim. See <u>Spengler</u>, 438 F.Supp.2d at 811 ("this Court is not persuaded that the Ohio legislature envisioned a general public that was aware of this subtle nuance which might save their claims").

Given the split of persuasive authority on the election of remedies, given that the Ohio Supreme Court has not directly settled the issue, and given that this Ohio claim is before this Court only on pendant jurisdiction, the Court will defer ruling on this issue at this time. The Court will deny this part of the motion to dismiss without prejudice; the Court may revisit the issue at a later time.

Accordingly, the "Motion to Dismiss" (doc. no. 24 in Case 11-cv–874 and doc. no. 25 in Case No. 11-cv–875):

a) is <u>GRANTED</u> insofar as the claim of intentional infliction of emotional distress (14th Cause of Action) is dismissed with prejudice; and

b) is <u>DENIED</u> as to the claims of Ohio age discrimination, ADA disability discrimination, and Ohio disability discrimination (respectively, the 7th, 12th, and 13th Causes of Action).

IT IS SO ORDERED.

                                            <u>        s/Herman J. Weber    </u>
                                           Herman J. Weber, Senior Judge
                                           United States District Court